UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

STEVEN "SHELBY" COLLYMORE,
      Plaintiff,

v.                                                                                          CIVIL ACTION NO. 18-11480-MPK

SUFFOLK COUNTY SHERIFF DEPT., and
DIRECTOR OF MEDICAL SERVICES,
      Defendants.

KELLEY, U.S.M.J.

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS (#21.)

I. Introduction.

Pro se plaintiff Steven "Shelby" Collymore alleges that defendants, Suffolk County Sheriff's Department (SCSD) and the Director of Medical Services (Medical Director) at the South Bay House of Correction (SBHOC), have discriminated against her by refusing to prescribe her the hormone estrogen. This matter is before the court on defendant Medical Director's motion to dismiss (#21) for failure to state a claim upon which relief can be granted. No opposition has been filed to the dispositive motion.

Because plaintiff does not allege facts plausibly supporting a claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment, the motion to dismiss (#21) is GRANTED.

II. The Facts.

The factual allegations in the complaint are accepted as true and taken in the light most favorable to plaintiff, the non-moving party. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-

1

56 (2007). Collymore is an inmate incarcerated at SBHOC since May 10, 2018, serving a one-year sentence. (#1 at 6.) Plaintiff claims to be suffering from a "major mental illness - gender identity disorder," *Kosilek v. Maloney*, 221 F. Supp. 2d 156, 158 (D. Mass. 2002) (*Kosilek I*), a condition now known as "gender dysphoria." *Kosilek v. Spencer*, 774 F.3d 63, 69 n.1 (1st Cir. 2014) (*Kosilek III*). Anatomically male, Collymore alleges she is transitioning "to that of a female" and has expressed her "made up mindset" and "desire" to be prescribed estrogen by SBHOC's medical department. (#1 at 6.) She has attended therapy sessions with a medical provider at SBHOC several times and is "beyond adamant about being a transgender female." *Id.*

According to Collymore, the Medical Director denied her request for estrogen because, unlike other transgender individuals in SBHOC custody who were given the hormone, plaintiff had not been prescribed estrogen by a primary care provider before her incarceration. *Id.* While in SBHOC, plaintiff has been prescribed a high blood pressure medication that she had not been prescribed prior to her incarceration. *Id.* at 7. In plaintiff's view, this differing treatment supports her claim that she is "being discriminated against," *id.* at 6, and her belief that her "civil rights are being violated." *Id.* at 7.

By way of relief, Collymore seeks "to have the present rules at [SBHOC] and other similar institutions" amended to allow transgender individuals to be "given the female hormone estrogen even if one wasn't prescribed the female hormone prior to their being incarcerated." *Id.* at 4.[1]

---

[1] Just such a policy was adopted by the Massachusetts Department of Corrections a number of years ago. See *Kosilek III,* 774 F.3d at 69 ("In the past, the DOC had adopted a policy of 'freezing' a prisoner's treatment at whatever level that prisoner had attained prior to incarceration. Hormonal treatment, for example, would be available only to prisoners who had been prescribed hormones prior to incarceration. In place of this 'freeze-frame' policy, after *Kosilek I* (*Kosilek v. Maloney*, 221 F. Supp.2d 156 (D. Mass. 2002)) the DOC adopted a plan that allowed prisoners to receive additional treatment beyond the level of that received before entering prison, when such care was medically required.").

Plaintiff seeks a judgment in her favor mandating that defendants and similar institutions "amend the present way [they] treat transgender individuals from further transitioning." *Id.* at 7.

In the motion to dismiss, defendant Medical Director contends first, that plaintiff has not adequately pled that she has received constitutionally inadequate medical care and, second, that he is protected by the doctrine of qualified immunity. (#22.)

### III. Rule 12(b)(6) Standard.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "accept as true all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." *Keach v. Wheeling & Lake Erie Ry. Co. (In re Montreal, Me. & Atl. Ry., Ltd.)*, 888 F.3d 1, 6 (1st Cir. 2018); *González v. Vélez*, 864 F.3d 45, 50 (1st Cir. 2017). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011) (citing *Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12, 15 (1st Cir. 2003)); *In re Montreal*, 888 F.3d at 7 n.2.

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The First Circuit recently explained:

> The plausibility standard requires a court to choreograph a two-step pavane. *See A.G. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). First, the court must "strip away and discard the complaint's conclusory legal allegations." *Shay v. Walters*, 702 F.3d 76, 82 (1st

3

Cir. 2012). Second, "the court must determine whether the remaining facts allow it 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Backpage.com, LLC*, 817 F.3d 12, 24 (1st Cir. 2016) (quoting *Morales–Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)).

*In re Montreal,* 888 F.3d at 6. After undertaking this exercise, "[d]ismissal is warranted when a complaint's factual averments are 'too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture.'" *Id.* (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc)).

When considering whether plaintiff's complaint states a cognizable § 1983 claim, her handwritten, pro se document is to be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that pro se complaints, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

IV. <u>Discussion</u>.

A. The Federal Claim.

Section 1983 is a procedural mechanism which enforces constitutional and statutory rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994).

> The legal framework pertaining to a section 1983 claim is well established. 'Section 1983 supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by federal law.' *Redondo–Borges v. U.S. Dep't of HUD,* 421 F.3d 1, 7 (1st Cir. 2005) (quoting *Evans v. Avery,* 100 F.3d 1033, 1036 (1st Cir. 1996)). To make out a viable section 1983 claim, a plaintiff must show both that the conduct complained of transpired under color of state law and that a deprivation of federally secured rights ensued.

4

*Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011). Here, the right alleged to be violated is the Eighth Amendment, to wit: Defendant's refusal to provide access to estrogen while plaintiff is confined at SBHOC constitutes cruel and unusual punishment in violation of the Eighth Amendment.

To state a viable claim for relief under the Eighth Amendment, a plaintiff inmate must allege prison officials displayed a "deliberate indifference to serious medical needs." *Zingg v. Groblewski*, 907 F.3d 630, 634 (1st Cir. 2018) (quoting *Feeney v. Corr. Med. Servs.,* 464 F.3d 158, 161-62 (1st Cir. 2006)). The basis of an Eighth Amendment claim is shortages or failures in care that exhibit intent and harmfulness. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (reasoning the prohibition implies an act done with intentionality); *Kosilek III*, 774 F.3d at 82. Prison officials must provide "humane conditions of confinement," *Farmer*, 511 U.S. at 832, and the medical care cannot be "so inadequate as to shock the conscience." *Zingg*, 907 F.3d at 635 (quoting *Torraco v. Maloney*, 923 F.2d 231, 235 (1st Cir. 1991)) (internal quotation marks omitted).

To prevail on an Eighth Amendment claim of deliberate indifference based on inadequate or delayed medical care, plaintiff must satisfy both an objective and subjective inquiry. *See Zingg*, 907 F.3d at 635; *Kosilek III,* 774 F.3d at 82 ("[T]o prove an Eighth Amendment violation, a prisoner must satisfy both of two prongs: (1) an objective prong that requires proof of a serious medical need, and (2) a subjective prong that mandates a showing of prison administrators' deliberate indifference to that need.") (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). As detailed below, Collymore has failed to overcome either hurdle.

1. Objective Prong.

First, under the objective prong, plaintiff must prove that she has a serious medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even

5

a layperson would easily recognize the necessity for a doctor's attention." *Zingg*, 907 F.3d at 635 (quoting *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir.1990)). The First Circuit has held that gender dysphoria[2] is a serious medical need, and a treatment plan including only supportive therapy can be inadequate and result in serious harm that would be violative of the Eighth Amendment. *See Kosilek III,* 774 F.3d at 69 (discussing *Kosilek I*, 221 F. Supp. 2d at 161). Gender dysphoria "can cause intense mental anguish and require further treatment for some individuals who are already receiving psychotherapy and hormones. Severe gender [dysphoria], when not adequately treated, may lead to self-mutilation and suicide." *Kosilek v. Spencer*, 889 F. Supp. 2d 190, 229 (D. Mass. 2012) (*Kosilek II*), *aff'd*, 740 F.3d 733 (1st Cir. 2014), *reh'g en banc granted*, *opinion withdrawn* (Feb. 12, 2014), *on reh'g en banc*, 774 F.3d 63 (1st Cir. 2014), and *rev'd on other grounds*, 774 F.3d 63 (1st Cir. 2014) (internal citation omitted).

To satisfy the objective prong of the deliberate indifference inquiry, a plaintiff must show that the medical care provided by the prison "'is not adequate' as measured against 'prudent professional standards.'" *Nunes v. Massachusetts Dep't of Correction*, 766 F.2d 136, 142 (1st Cir. 2014) (quoting *United States v. DeCologero*, 821 F.2d 39, 43 (1st Cir. 1987)). In the instant case, Collymore does not allege she had been diagnosed with gender dysphoria or prescribed estrogen before her incarceration in May 2018. Plaintiff filed this action in July 2018, two months after her incarceration. During that two-month period, plaintiff had been seeing a therapist to discuss her "made up mindset" on transitioning. There are no facts alleged in the complaint to show that the care she received was constitutionally inadequate. Plaintiff is not entitled to the care of her choice, and disagreements about the proper course of care do not create constitutional claims. *See Kosilek*

---

[2] *See* Am. Psychiatric Ass'n, *What is Gender Dysphoria?,* https://www.psychiatry.org/patients-families/gender-dysphoria/what-is-gender-dysphoria (last visited January 18, 2019). To maintain consistency with the term used in the medical community and prior jurisprudence in the First Circuit, the term "gender dysphoria" is used in this opinion.

*II*, 889 F. Supp. 2d at 199 ("An inmate is not entitled to ideal care or the care of his choice. Courts must defer to the decisions of prison officials concerning what form of adequate treatment to provide an inmate. However, courts must decide if the care being provided is minimally adequate."); *United States v. Derbes,* 369 F.3d 579, 583 (1st Cir. 2004) (stating that prison administrators are "by no means required to tailor a perfect plan for every inmate").

Lisa, a medical provider at SBHOC, met with plaintiff during several therapy sessions[3] since she has been incarcerated to evaluate whether the "life changing decision is something [she] really want[s] as opposed [sic] to a passing thought and or a phase." (#1 at 6.) Plaintiff does not allege that a medical determination has been made she has gender dysphoria, or that hormonal therapy is medically necessary. There is no allegation that the prescription of estrogen is so obvious a need that it must be addressed within the first two months of incarceration. The standard calls for the necessity of a doctor's attention. Plaintiff has been seeing a therapist to discuss her concerns and to present herself for examination. Relief is not afforded based on disagreements with medical findings. *See Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993) ("[C]ourts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment."); *Ferranti v. Moran,* 618 F.2d 888, 891 (1st Cir. 1980) ("[A]llegations [that] simply reflect a disagreement on the appropriate course of treatment ... fall[ ] short of alleging a constitutional violation.").

    2. Subjective Prong.

Second, under the subjective prong, plaintiff must also allege a deprivation resulted from defendant's "sufficiently culpable state of mind … that amounts to deliberate indifference to the claimant's health or safety." *Zingg*, 907 F.3d at 635.

---

[3] The Medical Director argues that prescribing estrogen is not presently warranted because the counseling plaintiff is receiving at the early stage in her transition is a "very important first step." (#22 at 7.)

The Medical Director would be deliberately indifferent if he knew of and disregarded "an excessive risk to inmate health or safety," *Farmer*, 511 U.S. at 837, or acted with "purposeful intent," "wanton disregard," or to punish the inmate. *See Perry v. Roy*, 782 F.3d 73, 79 (1st Cir. 2015). Courts have given "significant weight" to security concerns as they relate to medical care and evaluating deliberate indifference. *Kosilek III*, 774 F.3d at 83; *see Battista v. Clarke*, 645 F.3d 449, 454 (1st Cir. 2011) ("[S]ecurity considerations also matter at prisons ... and administrators have to balance conflicting demands.").

Collymore has not alleged the Medical Director knowingly and purposefully put her at sufficiently serious risk, that harm occurred, or that defendant disregarded an excessive risk to her health. No allegations have been made regarding security concerns. Instead, plaintiff's claim is to have the institutional rules amended to "allow transgender individuals who are transitioning and or trying to be allowed to be given the female hormone estrogen even if one wasn't prescribed the female hormone prior to their being incarcerated." (#1 at 4.) As noted, that policy is already in place. Plaintiff does not contend the policy has not been followed properly. As she alleges, a therapist met with Collymore on several occasions during the two-month period of her incarceration to evaluate her. Whether more diagnostic techniques or forms of treatment should be performed is a matter of medical judgment. Even if plaintiff believes defendant has made an error in her treatment, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106.

In sum, Collymore has failed to allege facts sufficient to state a viable claim under § 1983 for violation of the Eighth Amendment. Because plaintiff's constitutional claim fails, the court need not address the issue of qualified immunity.

B. The State Law Claim.

It is not clear whether Collymore is attempting to state a claim under the Massachusetts Civil Rights Act (MCRA). To the extent that she is, her claim fails because there are no allegations of threats, intimidation, or coercion in her complaint. *See Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) ("The MCRA is the state analog to § 1983 and provides a cause of action for an individual whose rights … have been interfered with by 'threats, intimidation or coercion.'") (quoting Mass. Gen. Laws ch. 12, §§ 11H & I).

V. Conclusion.

For the reasons stated, it is ORDERED that Defendant's Motion to Dismiss (#21) is GRANTED.

/s/ M. Page Kelley
M. Page Kelley
January 29, 2019                             United States Magistrate Judge